## ARVID O. DAHL v. MINNEAPOLIS POLICE RELIEF ASSOCIATION, INC.

187 N. W. (2d) 671.

May 28, 1971—No. 42657.

*Dorian W. Zaske,* for appellant.

*Keith M. Stidd,* City Attorney, and *Jerome R. Jallo,* Assistant City Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Peterson, Kelly, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

The issue on this appeal is whether, in computing the time of service required for a pension, a policeman is entitled to credit for military service performed after he could have secured a release from duty.

Plaintiff was employed by the Minneapolis Police Department on February 24, 1942. By reason of such employment he became a member of the defendant, Minneapolis Police Relief Association, Inc. The defendant was created to maintain and administer

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

a pension fund for the benefit of its members. On March 24, 1942, plaintiff enlisted in the Army Air Force and served until November 7, 1945, when he received a previously requested separation. He returned to his work with the police department, continuing to work until January 31, 1951, when his Minnesota Air National Guard squadron was called to active duty because of the Korean conflict. At that time the plaintiff was a major. He served on active duty with the military until April 30, 1967, when he was discharged with a 20-year military retirement pension. As of April 30, 1967, plaintiff was living with his wife and family in their residence in Hawaii. On May 10, 1967, plaintiff left his wife, family, and residence in Hawaii, and returned to his former employment with the Minneapolis Police Department. After working for approximately 3½ weeks, plaintiff, on June 6, 1967, requested and was granted a vacation from his employment. He returned to Hawaii where he remained on vacation until September 4, 1967, when he was ordered back to his employment. He continued to work until October 15, 1967, when he submitted his resignation because of retirement. Upon his resignation, plaintiff returned again to his family and residence in Hawaii. At the time of his resignation he made application for a 20-year pension from defendant. This application was denied. He then brought this action, seeking a declaratory judgment that he is entitled to the pension. The trial court denied relief, and plaintiff appeals from the judgment entered.

L. 1949, c. 406, § 5, subd. 1, as amended by L. 1953, c. 127, § 5, and L. 1969, c. 560, § 1, provides in part:

"The association shall grant pensions payable from the policemen's pension fund in monthly installments, in the manner and for the following purposes:

"(1) Any member of the age of 50 years or more, who performs duty as a member of the police department of the city for 20 years or more, upon his written application after retiring from such duty, shall be paid monthly during his lifetime a pension * * *."

L. 1949, c. 406, § 5, subd. 4, as amended by L. 1953, c. 127, § 5, subd. 3, and L. 1963, c. 315, § 3, subd. 3, provides in part:

"In the case of any applicant for a pension pursuant to subdivision 1, clauses (1), * * * who, following admission to membership in the association, has served in the military forces of the United States in any war or national defense emergency subsequent to January 1, 1940, and thereafter returned honorably discharged from such service and resumed membership in the association, the period that the applicant spent in such military service shall be counted in computing periods of service required for benefits under this section * * *."

The determination of this case must be made only on the basis of this section because in subd. 3 it is further stated:

"The provisions of this subdivision shall apply and be in effect notwithstanding the provisions of the veteran's preference law or any other law, rule or bylaw providing for credit for military service in computing the pensions for members of the Minneapolis police relief association."

Testimony in the trial court established that from June 1955 to the time of his separation from the service, plaintiff could have requested and received a formal separation from duty. In response to the question, "Your squadron had been activated during the Korean Conflict. And would it be fair to state that if you would have made a formal request for separation from the service in June of 1955, that would have been effective one year in the future?" plaintiff replied, "Possibly right." To the question, "Now, some of these people that you had been called up with in 1951, in that same squadron, would it be fair to say that a majority of them had been returned to active civilian life by the year 1956?" he answered, "Yes." Plaintiff's total service on the Minneapolis police force was approximately 5½ years. There appears to be no question that plaintiff would have been entitled to military-service credit toward his pension for the 3 years and 8 months from February 4, 1942, to November 7, 1945,

and to credit for the 5 years and 11 months from January 31, 1951, through 1956. This adds up to 9 years and 7 months.

However, we have concluded that plaintiff is not entitled to any credit for military service after 1956 because he could have had a discharge but chose not to ask for it. The purpose of the statute before us is to permit a man to fulfill his military obligations without losing any rights incident to his employment. After completion of his *required* military service, the employee must return to his job if he wants to retain his rights. Failure to do so is a waiver of such rights.

A case supporting our conclusion is Smith v. Missouri Pacific Transp. Co. (8 Cir.) 313 F. (2d) 676, which involved a Federal statute governing reemployment rights of a serviceman. The plaintiff in that case entered active duty in 1942 and was discharged in 1953 with the rank of colonel. He had voluntarily extended his service career following the end of World War II in 1945. In 1953, when his former employer denied his application for reemployment, he brought an action to gain reinstatement to his former position. The court (Judge Harry A. Blackmun) held that the plaintiff had waived his right to reinstatement, agreeing with findings of the trial court—

"* * * (b)   that Congress did not desire to extend the protection which the Act afforded persons entering service on what was essentially a temporary basis to include those who deliberately elected not to separate from service; * * * (g) that he obviously had a basic interest in the military life and was content to remain on active duty as long as he could; (h) that 'employers as well as servicemen have rights'; and (i) that among these is the right to expect an employee who has entered military service, if he intends to invoke the reemployment benefits statutorily provided, to 'separate himself from the service as soon as he can * * *.' " 313 F. (2d) 681.

The court further stated (313 F. [2d] 682) :

"* * * To render a decision in favor of this plaintiff would be to recognize and to vest in one in his posture the power, step

by step, as extension-of-duty opportunities present themselves, in effect to make a career of the service and at the same time to force his civilian employer to hold or to make a place available for him throughout the career period and until such time as he chooses to bring his military life to an end or until it is finally terminated for him because of age, physical disability, or the like. This, we think, was not the intent of Congress. Appropriate civilian reemployment protection at the end of a non-career period of service was what our national legislative body had in mind."

While the Smith case involves a reemployment question, there is no basic difference in the principles involved in this case. From plaintiff's conduct, it is obvious that he never intended to work as a policeman after his discharge except in an attempt to secure pension rights. He had elected a military career and voluntarily abandoned his career as a policeman.

Plaintiff claims that Montgomery v. Minneapolis Fire Dept. Relief Assn. 218 Minn. 27, 15 N. W. (2d) 122, sustains his contention. Montgomery involved a fireman's pension and is distinguishable on its facts. In that case, a fireman had 18 years of service with the department and needed only 2 years of military-service credit for a pension. Here, plaintiff claims 14½ years of military service as a credit toward a pension. Minn. St. 645.17(1) provides that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable. Plaintiff's claim is certainly absurd and unreasonable. If plaintiff's position were correct, it would be possible for a policeman to become employed by the department, work for 1 day and then go into military service, come back to his job 1 day after the 20 years of military service and qualify for a pension. In Regan v. Firemen's Relief & Pension Fund, 417 Pa. 573, 208 A. (2d) 844, a fireman sought credit for military service in computing time of service for a pension. The fireman was not employed as a fireman prior to entering military service. While the facts are dis-

tinguishable from the case at hand, Mr. Justice Musmanno therein stated:

"* * * In addition, under the appellant's interpretation, a soldier could, in the computation of pension years, serve a longer time as a soldier than as a fireman and yet require the two services to be combined in the computation of fireman service. It is not necessary to dwell on the incongruity of awarding a fireman pension on a 20-year incumbency as a fireman, when he may have served only 2 or 3 years as a fireman." 417 Pa. 577, 208 A. (2d) 846.

We must conclude that the conduct of plaintiff involves an implied waiver of any claim for credit for military service performed after he could have been discharged.

Affirmed.